Approved: _____
NOAH SOLOWIEJCZYK
Assistant United States Attorney

Before: THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

ORIGINAL
DOC # 1

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

CARLOS FELIZ, and
RAUL PERALTA-BAUTISTA,

            Defendants.

- - - - - - - - - - - - - - - - - - x

15 MAG 2898

**COMPLAINT**

Violation of
21 U.S.C. § 846; and
18 U.S.C. §2

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JASON FRANKS, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

### COUNT ONE

    1. On or about August 17, 2015, in the Southern District of New York and elsewhere, CARLOS FELIZ and RAUL PERALTA-BAUTISTA, the defendants, intentionally and knowingly attempted to distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    2. The controlled substance involved in the offense was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.)

1

The bases for my knowledge of the foregoing charges are, in part, as follows:

3. I have been with the DEA for approximately ten years and am currently assigned to the New York Drug Enforcement Strike Force. I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. During the course of this investigation, I and other DEA agents have worked with a confidential source ("CS-1") who is paid for his work with law enforcement. CS-1 is a paid DEA informant who has been working with the DEA since approximately 2013. Information provided by CS-1 as part of this investigation and other investigations has proven reliable in the past and been corroborated by other independent evidence, including, among other things, recordings and surveillance by law enforcement.

5. On or about August 6, 2015, at the direction of the DEA, CS-1 contacted CARLOS FELIZ, the defendant, by telephone. During this telephone conversation and subsequent telephone conversations between CS-1 and FELIZ, all of which were recorded, FELIZ stated, in substance and in part, that he was interested in obtaining five kilograms of cocaine, and that he could provide $50,000 in cash as an upfront payment for the cocaine. During these telephone conversations with CS-1, FELIZ further indicated, in substance and in part, that he would be able to provide additional payment for the five kilograms of cocaine after he sold other narcotics that he already had in his possession.

6. On or about August 12, 2015, at the direction of the DEA, CS-1 again contacted CARLOS FELIZ, the defendant, by telephone, which conversation was recorded. During this telephone conversation, FELIZ stated, in substance and in part, that he was ready to go forward with the transaction and that he would meet CS-1 the next day to pick up the cocaine and provide payment.

2

7. On or about August 13, 2015, at the direction of the DEA, CS-1 contacted CARLOS FELIZ, the defendant, by telephone, which conversation was recorded. During this telephone conversation, CS-1 and FELIZ discussed, among other things, the price that FELIZ would pay per kilogram of cocaine. FELIZ stated, in substance and in part, that he desired to pay $32,000 per kilogram of cocaine, and CS-1 responded, in substance and in part, that he believed the price should be $36,500 per kilogram of cocaine. During a subsequent telephone conversation between CS-1 and FELIZ that same day, which conversation was recorded, CS-1 informed the defendant, in substance and in part, that the price of approximately $32,000 per kilogram of cocaine was acceptable to CS-1.

8. On or about August 13, 2015, CARLOS FELIZ, the defendant, spoke to CS-1 by telephone and indicated, in substance and in part, that his vehicle was not working properly. The transaction ultimately did not take place on August 13, 2015 due to FELIZ's vehicle trouble.

9. On or about August 16, 2015, at the direction of the DEA, CS-1 again contacted CARLOS FELIZ, the defendant, by telephone, which conversation was recorded. During this telephone conversation, FELIZ and CS-1 agreed, in sum and substance, to meet the next day to complete the previously discussed cocaine transaction.

10. On or about August 17, 2015, at the direction of the DEA, CS-1 contacted CARLOS FELIZ, the defendant, by telephone and instructed him to meet CS-1 in the vicinity of 815 Hutchinson River Parkway, in a parking lot in front of Five Guys Restaurant, located in the Bronx, New York (the "Bronx Location"). This meeting was surveilled by DEA agents including myself. From my participation in the surveillance, my conversations with other law enforcement agents who conducted surveillance, and my conversations with CS-1, I have learned that during the meeting, the following took place, in substance and in part:

 a. At approximately 3:30 p.m., FELIZ arrived at the Bronx Location in a silver Acura CL, with a New Jersey license plate ("Vehicle-1").

 b. Upon arriving at the Bronx Location, FELIZ telephoned CS-1, which conversation was recorded, and indicated, that he had arrived at the Bronx Location.

3

    c. CS-1 proceeded to exit his vehicle, and walk toward Vehicle-1. CS-1 spoke with FELIZ in the vicinity of Vehicle-1 in the parking lot directly in front of Five Guys Restaurant. During this conversation, FELIZ indicated to CS-1, in substance and in part, that he had brought another individual with him who was inside of Vehicle-1.

    d. FELIZ subsequently walked with CS-1 to the passenger side of Vehicle-1, and stated, in substance and in part, that CS-1 should get inside the vehicle and take a look at the money he had brought. FELIZ then opened the door to Vehicle-1. CS-1 then observed a male sitting in the front passenger seat of Vehicle-1 – later identified as RAUL PERALTA-BAUTISTA, the defendant – pull the front passenger seat forward and move a black bag (the "Black Bag") from the foot well area of the rear seat, towards the door of Vehicle-1. CS-1 responded, in substance and in part, that he would not get in Vehicle-1 and that FELIZ should instead bring the money to CS-1's vehicle.

    e. FELIZ then proceeded to grab the Black Bag from the rear seat of Vehicle-1 and then walked with CS-1 across the parking lot toward CS-1's vehicle while carrying the Black Bag.

    f. Upon arriving at the passenger side of CS-1's vehicle, CS-1 slid open the rear passenger door of the vehicle and FELIZ handed the Black Bag to CS-1. FELIZ then emptied bundles of United States currency[1] from the Black Bag onto a rear seat of CS-1's vehicle, and then took the now-empty Black Bag with him. FELIZ stated to CS-1, in substance and in part, that all of the money was there. CS-1 then closed the door to CS-1's vehicle.

    g. CS-1 and FELIZ then walked around CS-1's vehicle to the rear driver's side of CS-1's vehicle. CS-1 slid open the rear driver side door of CS-1's vehicle, removed a blue shopping bag (the "Blue Bag") from the vehicle, and handed the Blue Bag to FELIZ. FELIZ then asked, in substance and in part, whether all five kilograms of cocaine were in the bag, and whether the cocaine was pure. CS-1 responded affirmatively to both questions. The Blue Bag was filled with five brick-shaped

---

[1] This United States currency was subsequently seized by law enforcement agents from CS-1's vehicle shortly after the defendants' arrests.

4

powdered substances that were wrapped in black tape and were packaged in a manner consistent with kilogram bricks of cocaine.

        h. FELIZ then proceeded to walk back across the parking lot toward Vehicle-1 while carrying the Blue Bag and the empty Black Bag. Upon arriving at Vehicle-1, FELIZ approached the passenger door of Vehicle-1, opened the door, and placed the Blue Bag in the foot well of the front passenger seat, at the feet of RAUL PERALTA-BAUTISTA, the defendant, who was seated in the front passenger seat.

    11. On or about August 17, 2015, at approximately 3:40 p.m., I and other law enforcement agents participated in the arrests of CARLOS FELIZ and RAUL PERALTA-BAUTISTA, the defendants, in the vicinity of the Bronx Location. From my participation in the arrests, and my conversations with other participating law enforcement agents, I have learned, among other things, the following:

        a. FELIZ was seated in the front driver seat of Vehicle-1 at the time of his arrest.

        b. PERALTA-BAUTISTA was seated in the front passenger seat of Vehicle-1 at the time of his arrest.

        c. The Blue Bag was found in the foot well of the front passenger seat of Vehicle-1, beneath PERALTA-BAUTISTA's feet.

        d. The empty Black Bag was found in the rear seat area of Vehicle-1.

    12. On or about August 17, 2015, following the arrest of the defendants, other agents participating in this investigation took custody of Vehicle-1 and drove Vehicle-1 to 99 10th Avenue, New York, New York, and impounded Vehicle-1. Myself and other agents participating in this investigation subsequently conducted a search of Vehicle-1 on or about August 17, 2015, and recovered a white powdery substance[2], and approximately $1,500 in United States currency from inside of a secret compartment, or a "trap," located in the rear passenger seat area of Vehicle-1. During the search of Vehicle-1, numerous receipts bearing the name of CARLOS FELIZ, the

---

[2] A field test of the white powdery substance seized from Vehicle-1 was conducted, and the white powdery substance tested positive for the presence of cocaine.

defendant, and a card from BJ's Wholesale Club bearing the last name "Feliz," were also recovered from Vehicle-1.

WHEREFORE, the deponent respectfully requests that CARLOS FELIZ and RAUL PERALTA-BAUTISTA, the defendants, be imprisoned or bailed, as the case may be.

_____
JASON FRANKS
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me this
18th day of August, 2015

_____
THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK